ORDERED.

**Dated:  September 30, 2024**

_____

Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| Don Karl Juravin and | ) | Case No. 6:18-bk-06821-LVV |
| Must Cure Obesity, Co. | ) | Case No. 6:20-bk-01801-LVV |
| | ) | Substantively Consolidated Cases |
| Debtors. | ) | |
| | ) | |
| | ) | |
| Bella Collina Property | ) | Adv. No. 6:21-ap-00103-LVV |
| Owner's Association, Inc., | ) | (Consolidated with Adv. No. 6:21-ap-00141-LVV; Adv. No. 6:21-ap-00142-LVV; Adv. No. 6:22-ap-00016-LVV; Adv. No. 6:22-ap-00019-LVV and Adv. No. 6:22-ap-00020-LVV) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Don Karl Juravin, | ) | **APPLICABLE PROCEEDINGS**: |
| | ) | All Proceedings |
| Defendant. | ) | |

## MEMORANDUM OPINION

The integrity of the judicial process requires participation and cooperation of all parties. When cooperation does not exist, the system breaks down. Various rules of procedure and common law has been developed to provide a mechanism for requiring cooperation. Usually the threat of monetary sanctions works and sometimes it does not. While courts prefer to decide disputes based on the merits there are times when a party's conduct makes that impossible and the court must take

drastic action to ensure justice is had. This is one of those times.

Debtor, Don Karl Juravin ("Juravin") and his wife, Anna Juravin ("Anna") have repeatedly failed to comply with this Court's orders and directives, have resisted plaintiffs' attempts to take discovery, have filed meritless pleadings and taken frivolous positions thereby delaying resolution of these adversary proceedings. In a final straw, Juravin failed to attend trial—a trial that had already been continued **twice**, the latter at his request—and Anna appeared for the first few hours of trial but did not return after a lunch recess. Based on their disregard for this Court's orders and the litigation process, the Court has little choice but to strike their pleadings and enter default judgment in favor of plaintiffs.

<u>Juravin & MCO Bankruptcy Cases</u>

On October 31, 2018, Juravin filed a voluntary petition for chapter 7 bankruptcy.[1] Dennis D. Kennedy was appointed chapter 7 trustee ("Kennedy" or "Trustee"). In his bankruptcy schedules, Juravin disclosed assets valued over $1.7 million, including Juravin's ownership interests in several business entities of which he is an officer (collectively "Juravin Entities").[2] Juravin's liabilities exceeded $27 million, consisting primarily of a $25 million judgment in favor of the Federal Trade Commission ("FTC Judgment") and a $1.3 million mortgage on his home.[3]

---

[1] *In re Juravin*, Case No. 6:18-bk-06821-LVV at Doc. No. 1 (Bankr. M.D. Fla. filed Oct. 31. 2018)("Juravin Case"). On September 16, 2019, the Juravin Case was converted to Chapter 11. Juravin could not confirm a plan of reorganization and on March 16, 2020, the Court re-converted the case to Chapter 7. Juravin Case Doc. Nos. 174, 323.

[2] Juravin Case Doc. Nos. 1, 17. Juravin disclosed that he was an owner and officer of Must Cure Obesity, Co., Juravin, Incorporated and Roca Labs Nutraceutical USA, Inc.

[3] Juravin Case Doc. Nos. 1, 17. The FTC Judgment was the result of a 2015 complaint filed in the United States District Court for the Middle District of Florida against Juravin, the Juravin Entities and others alleging deceptive trade practices in connection with the marketing and sale of various weight-loss supplements and food products. Plaintiffs' Joint Exh. No. 44. Shortly before Juravin's bankruptcy filing, the District Court entered summary judgment in favor of the FTC finding Juravin and his co-defendants liable for, among other things, making false and unsubstantiated weight-loss claims about their products. *Id.* On January 4, 2019, the District Court entered the FTC Judgment and issued a permanent injunction. Plaintiffs' Joint Exh. No. 45. The FTC then filed a proceeding to determine dischargeability of the FTC Judgment, and on October 27, 2020, my predecessor in this case, Honorable Karen S. Jennemann, found the FTC Judgment nondischargeable under 11 U.S.C. § 523(a)(2)(A). *FTC v. Juravin*, Case. No: 6:19-ap-00030-KSJ, (Bankr. M.D. Fla. filed Feb. 1, 2019).

Bella Collina Property Owner's Association, Inc. ("Bella Collina"), is a home owners' association owed approximately $400,000 secured by a lien on Juravin's home, which Juravin disputes.[4] During the case, Kennedy retained counsel and other professionals to investigate the financial affairs of Juravin and recover assets.[5]

On January 31, 2020, one of the Juravin Entities—Must Cure Obesity, Co. ("MCO")—filed a voluntary petition for chapter 11 bankruptcy.[6] MCO was one of the entities through which Juravin operated and subject to the FTC Judgment.[7] About five months later, the Court converted MCO's bankruptcy case to chapter 7 and Kennedy was appointed chapter 7 trustee.[8] On its schedules , MCO disclosed assets valued over $1.1 million, consisting primarily of actions against third parties.[9] MCO's liabilities totaled $27 million, including the $25 million FTC Judgment.[10] Ultimately, the Juravin and MCO bankruptcy estates were substantively consolidated for all purposes.[11] Except for the amounts owed to the FTC, on June 26, 2020, Juravin received a discharge under 11 U.S.C. § 727 ("Discharge").[12]

<u>Trustee's Investigation, Break Order & Abated Sanctions</u>

Kennedy requested Juravin turn over certain estate assets, provide specific documents or information relating to the financial affairs of Juravin or MCO, and attend continued meetings of

---

[4] Juravin Case Doc. Nos. 1, 17; *Bella Collina Property Owner's Assoc. Inc., v. Juravin,* No. 6:21-ap-00103-LVV, Doc. No. 15 (Bankr. M.D. Fla. filed June 25, 2021) Amended Complaint at ¶ 11. *See also* Juravin Case Claim No. 6-2. The claim consists of $9,704.84 for past due assessments, $267,809.50 for court awarded sanctions and $123,597.36 of attorney fees and costs.

[5] Juravin Case Doc. No. 640.

[6] *In re Must Cure Obesity, Co.*, Case No. 6:20-bk-01801-LVV at Doc. No. 1 (Bankr. M.D. Fla. filed Jan. 31, 2020)("MCO Case").

[7] Plaintiffs' Joint Exh. Nos. 44, 45.

[8] MCO Case Doc. Nos. 36, 37. The case was converted to chapter 7 on May 29, 2020.

[9] MCO Case Doc. No. 1.

[10] MCO Case Doc. No. 1.

[11] On November 27, 2023, the Court granted Trustee's motion for substantive consolation of the Juravin and MCO bankruptcy estates for all purposes. Juravin Case Doc. Nos. 914, 939.

[12] Juravin Case Doc. No. 369.

creditors in his and MCO's bankruptcy cases.[13] Juravin did not comply and the Court granted Kennedy's motion to compel.[14] The Court directed Juravin to turn over estate assets, produce specific documents and attend the continued meetings of creditors ("Compel Order").[15] Juravin failed to comply with the Compel Order and after notice and hearing, the Court found Juravin in contempt ("Contempt Order").[16]

The Court afforded Juravin an opportunity to purge his contempt before April 19, 2021 by complying with the Compel Order.[17] Before the deadline, Juravin alleged compliance.[18] The Trustee disagreed and alleged Juravin and Anna were actively concealing information and assets in both estates.[19] As a result, the Trustee requested, under seal, a break order to obtain access to Juravin's home to recover any business records of the Juravin Entities, recover any electronics devices containing information about Juravin, the Juravin Entities or estate assets, and recover any estate assets.[20] The Court entered the break order ("Break Order") and on May 5, 2021 the U.S. Marshal executed.[21] The following items were removed from Juravin's home: eight (8) computers, two (2) iPads, three (3) cell phones, two (2) Samsung tablets, one (1) SanDisk storage device, various electronic power adapters (collectively "Electronic Devices"), three (3) Breitling wristwatches and various documents located throughout the home.[22]

---

[13] Juravin Case Doc. Nos. 442, 449.

[14] *Id*.

[15] Juravin Case Doc. No. 449. The Compel Order directed Juravin to produce documents such as personal and corporate tax returns from 2012 through 2018, all documents reflecting any income, services or property received by Juravin or MCO within two years of the bankruptcy filing, and all documents relating to any monies owed or loaned to or by Juravin.

[16] Juravin Case Doc. No. 463.

[17] Juravin Case Doc. Nos. 463, 473. At Juravin's request, the Court extended the initial deadline of April 9, 2021.

[18] Juravin Case Doc. No. 484.

[19] Juravin Case Doc. No. 490.

[20] Juravin Case Doc. No. 490. The Court took no action on Kennedy's initial request, which he later supplemented. *See* Juravin Case Doc. Nos. 441, 503. On February 17, 2023, the Court entered an order unsealing all documents in the Juravin case. Juravin Case Doc. No. 814.

[21] Juravin Case Doc. Nos. 497, 502. The Court signed the Break Order on April 29, 2021.

[22] Juravin Case Doc. No. 497.

Kennedy sent the Electronic Devices to Online Security Inc. ("Online Security") for analysis and shortly thereafter, Juravin and Kennedy agreed to entry of an order respecting the Electronic Devices and electronically stored information ("ESI Order").[23] The ESI Order required Juravin to provide Online Security access to the Electronics Devices and accounts held with third-party providers such as Apple, Google, and Facebook, so that Online Security could access emails, files and other data. About two months after entry of the ESI Order, Kennedy requested the Court enter an order to show cause why Juravin should not be held in contempt and sanctioned for violating the ESI Order by allegedly deleting "tens of thousands" of files and interfering with Online Security's access to the information sought in the ESI Order.[24] The Court granted Kennedy's request, in part, amending the ESI Order to provide Online Security complete and exclusive access to the third-party accounts. The Court scheduled a hearing on Kennedy's remaining requests.[25] At the hearing, the parties agreed to abate the matter and the Court entered an order abating without prejudice Kennedy's request for an order to show cause why Juravin should not be held in contempt and sanctioned ("Abated Sanction Request").[26]

<u>The Consolidated Adversary Proceedings</u>

Between 2021 and 2022, Kennedy filed six complaints seeking to avoid and recover transfers made to Juravin, his spouse Anna, the non-bankrupt Juravin Entities consisting of Juravin, Incorporated ("Juravin, Inc. (inactive)") and Roca Labs Nutraceutical USA, Inc. ("Roca Labs"), a newly formed entity also called Juravin, Incorporated ("Juravin, Inc. (active)") and an entity solely held by Anna called United Medical Group International, Inc. ("UMGI"), all relating

---

[23] Juravin Case Doc. No. 526.
[24] Juravin Case Doc. No. 546.
[25] Juravin Case Doc. No. 548.
[26] Juravin Case Doc. No. 587. The hearing occurred on September 9, 2021 and continued to October 13, 2021.

to either the Juravin or MCO bankruptcy (collectively "Trustee Proceedings").[27] Bella Collina also filed a complaint against Juravin seeking to revoke the Discharge under 11 U.S.C. §727(d)(1) and (2) ("Bella Collina Proceeding").[28] The Trustee later intervened as party plaintiff in the Bella Collina Proceeding.[29] Juravin, Anna, Juravin, Inc., and UMGI, all represented by counsel, filed answers and affirmative defenses in the Trustee Proceedings and Juravin filed an answer and affirmative defenses in the Bella Collina Proceeding.[30] Roca Labs did not respond to the complaint resulting in the entry of a default and final default judgment in favor of Kennedy, which concluded one of the Trustee Proceedings.[31] Although the adversary proceedings initially progressed separately, Kennedy requested that certain proceedings be consolidated for discovery and trial, which the Court granted. Eventually, all adversary proceedings—the five remaining Trustee Proceedings and the Bella Collina Proceeding—were consolidated for discovery and trial.[32]

---

[27] The Trustee Proceedings are: *Kennedy v. Juravin, Inc.*, No. 6:21-ap-00141-LVV (Bankr. M.D. Fla. filed Oct. 4, 2021) ("Kennedy AP 141"); *Kennedy v. Natural Vitamins Laboratory Corp.*, No. 6:21-ap-00142-LVV (Bankr. M.D. Fla. filed Oct. 4, 2021)("Kennedy AP 142"); *Kennedy v. Juravin, Inc.*, No. 6:22-ap-00016-LVV (Bankr. M.D. Fla. filed Jan. 30, 2022) ("Kennedy AP 16"); *Kennedy v. Natural Vitamins Laboratory Corp.*, No. 6:22-ap-00019-LVV (Bankr. M.D. Fla. filed Jan. 30, 2022)("Kennedy AP 19"); *Kennedy v. Juravin*, No. 6:22-ap-00020-LVV(Bankr. M.D. Fla. filed Jan. 30, 2022)("Kennedy AP 20").
[28] *Bella Collina Property Owner's Assoc. Inc., v. Juravin,* No. 6:21-ap-00103-LVV, Doc. No. 15 (Bankr. M.D. Fla. filed June 25, 2021)("Bella Collina AP").
[29] Bella Collina AP Doc. No. 53.
[30] Bella Collina AP Doc. No. 25; Kennedy AP 141 Doc. No. 32; Kennedy AP 142 Doc. No. 40; Kennedy AP 16 Doc. No. 17; Kennedy AP 19 Doc. No. 20; Kennedy AP 20 Doc. Nos. 16, 76.
[31] *Kennedy v. Roca Labs Nutraceutical USA, Inc., (In re Juravin)*, 6:21-ap-00144-LVV, Doc. No. 28. The judgment was entered on October 7, 2022.
[32] Bella Collina AP Doc. No. 215; Kennedy AP 141 Doc. No. 113; Kennedy AP 16 Doc. No. 28; Kennedy AP 142 Doc. No. 70; Kennedy AP 19 Doc. No. 33; Kennedy AP 20 Doc. No. 25.

<u>The First Two Scheduled Trials</u>

In 2022, the Court entered case management orders in the Trustee Proceedings and Bella Collina Proceeding that scheduled two three-day trials in the summer of 2023.[33] The case management orders provided deadlines to complete discovery and file pretrial disclosures, exhibits and witness lists. After entry of the case management orders however, counsel for Juravin, Anna, UMGI and Juravin, Inc. withdrew.[34] Juravin, Anna, UMGI and Juravin, Inc. (active) and Juravin, Inc. (inactive) did not obtain new counsel. At Kennedy's request and without opposition by Juravin, the Court then rescheduled the trials and modified the case management orders.[35]

<u>Two More Scheduled Trials & Discovery Delays</u>

On May 12, 2023, the Court entered orders scheduling a three-day trial beginning November 15, 2023 for the Bella Collina Proceeding and two Trustee Proceedings and a two-day trial beginning November 29, 2023 for three Trustee Proceedings (collectively "November 2023 Trial CMO").[36] The November 2023 Trial CMO established revised deadlines to complete discovery and file pretrial disclosures, exhibits and witness lists. A final pretrial conference was scheduled for October 5, 2023.

---

[33] The case management orders scheduled trials to begin on June 28, 2023 and July 12, 2023. Kennedy AP 141 Doc. No. 49; Kennedy AP 142 Doc. No. 62. Initially, the Bella Collina Proceeding had its own case management order that had similar deadlines but did not schedule a trial. On February 7, 2023, the Court entered an order consolidating for discovery and trial the Bella Collina Proceeding with the two Trustee Proceedings scheduled for trial on July 12, 2023. Bella Collina AP Doc. Nos. 32, 54.

[34] On December 8, 2022, the Court granted the request by Aldo G. Bartolone, Jr. to withdraw as counsel for Juravin. Juravin Case Doc. Nos. 739, 759. On December 19, 2022, the Court granted the request by Henry N. Portner to withdraw as counsel for Juravin, Anna, UMGI and Juravin, Inc. Juravin Case Doc. Nos. 740, 768. Although the record is unclear whether Mr. Portner represented Juravin, Inc. (active), Juravin (inactive), or both, the order allowing Mr. Portner to withdraw relieved him of further responsibility for "any other entity" he represented in the Trustee Proceedings. Juravin Case Doc. No. 768.

[35] Bella Collina AP Doc. Nos. 107, 111; Kennedy AP 141 Doc. Nos. 64, 69.

[36] Bella Collina AP Doc. No. 111; Kennedy AP 141 Doc. No. 69.

A month before the final pretrial conference, Kennedy filed notices that Juravin and Anna would be deposed on October 11 and 12, 2023.[37] Juravin and Anna did not oppose the deposition notices. A week before the final pretrial conference, Juravin filed a motion requesting that the Court require the parties to meet and confer 14 days *before* the final pretrial conference which if granted, would have required the Court to continue the October 5th final pretrial conference ("Meeting Request").[38] The Court denied the Meeting Request.[39] Juravin then began filing notices of deposition and subpoenas for fifteen individuals of which the Court quashed twelve and found only three appropriate.[40]

On October 5, 2023, Juravin, Anna and counsel for Bella Collina and Kennedy attended the final pretrial conference.[41] Although the upcoming deposition of Juravin and Anna was discussed, neither Juravin nor Anna informed the Court of any issues regarding their scheduled depositions.[42] Two days before her deposition, however, Anna filed a notice asserting a Florida state court hearing prevented her attendance.[43] The next day Anna then filed a motion requesting the Court limit the hours of her deposition.[44] Juravin and Anna did not attend their depositions.

Instead, Juravin proceeded to file motions, as amended, requesting the Court continue the November 2023 trials for 90 days asserting he had family in Israel and due to war, he may need to travel to Israel ("Juravin's Motion to Continue Trial").[45] Bella Collina and Kennedy requested that the Court compel Juravin and Anna to attend their depositions, sanction them for failing to

---

[37] Bella Collina AP Doc. Nos. 146, 147. Kennedy filed the notices on September 12, 2023.
[38] Bella Collina AP Doc. No. 161.
[39] Bella Collina AP Doc. No. 251.
[40] Bella Collina AP Doc. Nos. 153, 154, 155, 156, 157, 158, 159, 160, 180, 181, 182, 183, 184, 185, 186 and 267. Juravin filed the motion on September 29, 2023 and the notices on September 29, 2023 and October 13, 2023.
[41] Bella Collina AP Doc. No. 168; Kennedy AP 141 Doc. No. 91.
[42] *Id.*
[43] Bella Collina AP Doc. No. 172.
[44] Bella Collina AP Doc. No. 175. Anna filed the motion on October 11, 2023.
[45] Juravin filed the motions on October 11, 2023 which he later amended on October 18, 2023. Bella Collina AP Doc. Nos. 173, 198; Kennedy AP 141 Doc. Nos. 95, 104.

appear, and proceed on the Abated Sanction Request filed in the Juravin bankruptcy ("Renewed Sanction Request").[46] A hearing was scheduled for October 25, 2023 to consider Juravin's Motion to Continue Trial and the Renewed Sanction Request.[47]

Juravin and Anna objected to the Court hearing the Renewed Sanction Request on October 25, 2023 arguing they needed more time to prepare.[48] Juravin also filed a ten-page "Notice to the Court" where he objected to the Court holding a hearing to consider his request to continue the trials and requested to appear by telephone at the hearing.[49] In support of his request, Juravin attached a graphic photo related to the Hamas attack on Israel. Notably, Juravin's notice also requested the Court postpone the proceeding until February 2024, at which time he would be prepared to proceed.[50] The Court denied Juravin's request to appear by telephone and immediately had the attached photo stricken from the record.[51]

On October 25, 2023, Juravin, Anna and counsel for Bella Collina and Kennedy appeared at the hearing.[52] The Court granted Juravin's Motion to Continue Trial and entered orders scheduling a five-day trial beginning February 26, 2024 in the Trustee Proceedings, Bella Collina Proceeding and later the Renewed Sanction Request (collectively "February 2024 Trial CMO").[53] The Court further directed Juravin to appear for a deposition on November 1, 2023 and that Anna appear for two half-day depositions on November 16 and 17, 2023 ("Deposition Directive").[54] At the

---

[46] Bella Collina AP Doc. No. 189; Kennedy AP 141 Doc. No. 102. The motions were filed on October 17, 2023 and October 18, 2023, respectively.
[47] Bella Collina AP Doc. Nos. 200, 204, 206.
[48] Bella Collina AP Doc. Nos. 210, 211.
[49] Bella Collina AP Doc. No. 208.
[50] Bella Collina AP Doc. No. 208, p. 9.
[51] Bella Collina AP Doc. Nos. 208, 209. The photo appearing to be of a dead human infant was stricken as immaterial, impertinent and scandalous under Fed. R. Bankr. P. 7012(f).
[52] Bella Collina AP Doc. No. 212.
[53] Bella Collina AP Doc. Nos. 231, 302.
[54] Bella Collina AP Doc. Nos. 212. The half-day depositions of Anna were designed to accommodate her schedule.

hearing, the Court warned Juravin about his delay tactics.[55] The Court informed Juravin that if he did not attend his deposition, the Court could strike his pleadings and enter judgment in favor of Plaintiffs. The Court made clear to Juravin that if he wanted to participate in these proceedings, he needed to attend hearings or the Court would proceed without him. Both Juravin and Anna indicated they understood. The February 2024 Trial CMO revised the deadlines to complete discovery and file pretrial disclosures, exhibits and witness lists. A final pretrial conference was scheduled for January 16, 2024. The February 2024 Trial CMO made clear no further continuances would be given.[56]

<u>More Discovery Delays & Another Final Pretrial Conference</u>

After the Court's Deposition Directive, Juravin appeared for his deposition, but wanted to use his own device to record the deposition in addition to the court reporter.[57] Kennedy and Bella Collina objected and as a result, Juravin's deposition did not proceed.[58] Kennedy and Bella Collina filed a motion to compel requesting an order precluding Juravin and Anna from recording their depositions with their own devices and that Juravin attend his deposition ("Motion to Compel Depositions"), which the Court granted.[59] Juravin and Anna finally appeared for their respective depositions; however, based on their failure to respond to certain questions and their failure to adequately respond to other discovery requests made in these proceedings, Kennedy and Bella Collina filed another motion requesting that the Court sanction Juravin, Anna and "their entities" under Bankruptcy Rule 7037 by deeming the facts alleged in the complaints as true, allowing negative inferences for Fifth Amendment privilege assertions, prohibiting presentation of their

---

[55] Bella Collina AP Doc. No. 212.
[56] Bella Collina AP Doc. No. 231 at ¶ 2.
[57] Bella Collina AP Doc. No. 227, 11/1/23 Juravin Dep. Tr.
[58] Bella Collina AP Doc. No. 227, 11/1/23 Juravin Dep. Tr.
[59] Bella Collina AP Doc. Nos. 223, 229.

evidence at trial, striking their pleadings, and entering default final judgments on all counts in favor of Bella Collina and Kennedy ("Second Sanction Request").[60]

On January 16, 2024, Juravin, Anna, and counsel for Bella Collina and Kennedy attended the rescheduled final pretrial conference. The Second Sanction Request was scheduled for an evidentiary hearing in conjunction with the trial on February 26, 2024.[61] The Court made clear to all parties at the second final pretrial conference that discovery had to be completed, no further hearings would be scheduled, and trial would proceed as provided in the February 2024 Trial CMO.

The next day, Juravin and Anna filed requests to supplement their discovery responses with "revised, complete, and accurate" responses or "comprehensive and accurate" revisions to discovery, including their deposition transcripts, because they did not understand the implications or consequences of invoking the Fifth Amendment privilege.[62] The Court denied Juravin and Anna's request to supplement their discovery responses.[63] Juravin then proceeded to file, after the discovery deadline, a series of motions and notices relating to discovery, all of which the Court denied as untimely for the reasons stated in the orders.[64] Juravin's request for the Court to reconsider the orders on the late discovery and for a hearing on reconsideration were likewise denied.[65]

---

[60] Bella Collina AP Doc. Nos. 280, 349. The motion was filed on December 28, 2023 and later supplemented by Bella Collina on February 8, 2024. By the supplement, Bella Collina requested attorney fees and costs totaling $2,337.50 for Juravin's late cancelation and failure to appear at the deposition of a Bella Collina representative noticed by Juravin.

[61] Bella Collina AP Doc. No. 303.

[62] Bella Collina AP Doc. Nos. 293, 294. The requests were filed on January 18, 2024.

[63] Bella Collina AP Doc. No. 314.

[64] After the January 29, 2024 discovery deadline, Juravin filed notices of depositions for Karan Arora, Dennis Kelleher and motions to compel document requests or discovery from Kennedy, Dennis Kelleher and Randall F. Greene. Bella Collina AP Doc. Nos. 338, 342, 346, 348, 353, 375, 377, 378.

[65] Bella Collina AP Doc. Nos. 393, 394, 397, 398.

Anna Juravin's Bankruptcy Filings

While these proceedings were ongoing, Anna filed two bankruptcy cases under chapter 13. The first case, filed on June 27, 2022, disclosed assets valued over $2.5 million, including Anna's ownership interests in UMGI and Juravin Inc. (active), and liabilities exceeding $1.5 million consisting primarily of a $1.3 million home mortgage ("Anna 2022 Case").[66] Anna initially proposed a plan to pay the home mortgage and arrears, but she did not make the required plan payments.[67] To avoid dismissal, Anna amended her plan to pay the home mortgage outside bankruptcy which reduced her plan payments to about $1,000 a month—only paying arrears for real property taxes and priority claims.[68] Anna still did not make all required payments under the amended plan and on March 27, 2023, the Court dismissed the Anna 2022 Case.[69]

Less than a year later (and six weeks before the February 2024 Trial), Anna filed her second chapter 13 bankruptcy ("Anna 2024 Case").[70] Anna requested a 30-day extension to file the required schedules and statements, which the Court granted in part, allowing Anna an additional week to file the papers.[71] Except for listing values as "unknown" and providing less detail, Anna's schedules and statements appeared almost identical to those filed in the Anna 2022 Case.[72] Anna's plan was also similar which proposed to pay arrears for real property taxes and some homeowner association fees, with remaining creditors to be paid outside bankruptcy.[73]

---

[66] *In re Anna Juravin*, Case No. 6:22-bk-02258-LVV at Doc. Nos. 1, 16 (Bankr. M.D. Fla. filed June 27, 2022)("Anna 2022 Case").

[67] Anna 2022 Case, Doc. Nos. 17, 69. Four months after Anna filed the case, the Chapter 13 Trustee requested dismissal because Anna made only a single monthly payment of $3,920 as required by her plan.

[68] Anna 2022 Case Doc. No. 74. The amended plan provided for payment of real property taxes totaling $47,159.84 and less than $1,000 to the Internal Revenue Service. Creditors with unsecured claims received nothing under the amended plan.

[69] Anna 2022 Case Doc. No. 160.

[70] *In re Anna Juravin*, Case No. 6:24-bk-00045-LVV at Doc. No. 1 (Bankr. M.D. Fla. filed Jan. 5, 2024)("Anna 2024 Case"). Anna filed the case on January 5, 2024.

[71] Anna 2024 Case Doc. Nos. 14, 15.

[72] *Compare* Anna 2022 Case Doc. No. 16 with Anna 2024 Case Doc. No. 21.

[73] Anna 2024 Case Doc. No. 22.

Kennedy sought stay relief to proceed with the Trustee Proceedings against Anna to liquidate the estates' claims, which the Court granted over Anna's opposition.[74] At Anna's request, the Court dismissed the Anna 2024 Case, but imposed a 180-day injunction against Anna from filing another bankruptcy case.[75]

    The Trial

Three days before the February 2024 Trial, Juravin and Anna filed an emergency motion to "protect due process rights" asserting deposition and discovery delays caused by Kennedy or others did not allow them sufficient time to prepare for trial and requesting that the Court "take whatever measures necessary" to preserve their rights ("Due Process Motion").[76] On the same date, Anna also filed an "Emergency Notice" asserting Juravin was undergoing intensive medical care and sought permission to share Juravin's medical records confidentially with the Court.[77]  No continuance of trial was requested.

On February 26, 2024, Anna, Kennedy, counsel for Bella Collina and counsel for Kennedy appeared for trial. Juravin did not appear. At trial, Anna requested a continuance of the trial and provided the Court with papers regarding Juravin's health ("Second Motion to Continue Trial") which the Court reviewed in camera. After reviewing the papers and Anna confirming that Juravin was not hospitalized, the Court denied the Second Motion to Continue Trial for the reasons stated in open court and proceeded with the trial. The Court admitted exhibits submitted by Bella Collina, Kennedy and Anna.[78] Counsel for Kennedy had finished his initial examination of witness, Charles Ballot, when the Court recessed the trial for a one-hour lunch break.

---

[74] Anna 2024 Case Doc. Nos. 19, 28, 31.
[75] Anna 2024 Case Doc. Nos. 73, 78.
[76] Bella Collina AP Doc. No. 415. Juravin and Anna filed the motion on February 23, 2024.
[77] Bella Collina AP Doc. No. 416.
[78] Bella Collina AP Doc. Nos. 424, 425. Juravin Case Doc. No. 1037.

During recess, Anna informed a Clerk of Court employee that she had an emergency and would not return. Anna was not present when the Court resumed trial one hour later. The Court provided Bella Collina and Kennedy with the option to either proceed with trial or the Court would consider their earlier request for entry of a default judgment. Bella Collina and Kennedy declined to proceed with trial. The Court then suspended the trial and informed the parties an order would be entered instructing them how they should proceed.

<u>Post-Trial Filings</u>

The next day, Juravin and Anna filed a joint emergency motion to continue the trial requesting a 60-day continuance due to Juravin's health, attaching a document from a health clinic ("Third Motion to Continue Trial").[79] The Court denied the Third Motion to Continue and entered an order concluding the trial and informing the parties no further information was needed to render a decision.[80] About a week later, Juravin and Anna each filed a "motion for fair trial" again requesting a 60-day continuance due to Juravin's health, this time attaching a doctor's note ("Fourth Motion to Continue").[81] Shortly thereafter, Juravin filed motions for sanctions against counsel for Bella Collina and counsel for Kennedy under Rule 9011 asserting that the Motion to Compel Depositions contained unsupported inaccurate allegations about Juravin which they used to bias the Court.[82] Now realizing that filing bankruptcy was "a mistake" Juravin then filed a motion requesting that the Court revoke his discharge and dismiss his chapter 7 bankruptcy case.[83]

## **Analysis**

To recap, the Bella Collina Proceeding, Trustee Proceedings, Renewed Sanction Request and Second Sanction Request were all scheduled for a five-day trial beginning on February 26,

---

[79] Bella Collina AP Doc. No. 420. The motion was filed February 27, 2024.
[80] Bella Collina AP Doc. No. 421.
[81] Bella Collina AP Doc. Nos. 423, 427; Juravin Case Doc. No. 1036.
[82] Bella Collina AP Doc. Nos. 428, 429.
[83] Bella Collina AP Doc. No. 431; Juravin Case Doc. No. 1040.

2024—two years after the last complaint was filed. This was the third continued trial date in these proceedings, having been continued the second time at Juravin's request and after significant discovery delays. Juravin and Anna were warned that there would be no further continuances. Juravin did not appear for trial. UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) are corporate entities who are not represented by counsel and did not appear at trial. Anna appeared for part of the trial, but left after the first recess and did not return. Bella Collina and Kennedy appeared for trial, returned after the first recess, but elected not to proceed with trial or present additional evidence, instead requesting that the Court consider their sanction requests and enter a default judgment against all defendants.

Having considered the record and evidence presented, the Court sanctions all defendants for failing to comply with the Court orders and directives, and under Rule 7016, strikes defendants' pleadings and affirmative defenses and enters final default judgments in favor of Bella Collina and Kennedy.

<u>Rule 16(f) Sanctions</u>

Federal Rule of Civil Procedure 16(f), made applicable by Bankruptcy Rule 7016, provides the court may issue "any just orders" as a sanction if, among other things, a party fails to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f).[84] This rule is "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). The court has discretion determining whether a pattern of delay or deliberate refusal to comply with

---

[84] Rule 16(f) states:
(f) Sanctions.
   (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
      (A) fails to appear at a scheduling or other pretrial conference;
      (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
      (C) fails to obey a scheduling or other pretrial order.

court directions exist which justify sanctions under Rule 16(f). *Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015). *See also Yaffa v. Weidner*, 717 F. Appx' 878, 883 (11th Cir. 2017). No finding of bad faith is required. *Id*. Sanctions under Rule 16(f) may include the striking of pleadings or rendering a default judgment against the disobedient party. Fed. R. Civ. P. 16(f).[85]

The Court concludes that striking the answers, including any affirmative defenses, filed by Juravin, Anna, UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) and entering a default judgment against them is appropriate in these adversary proceedings. Juravin has consistently delayed these proceedings by failing to timely complete discovery, requesting inappropriate discovery requiring Court action, failing to attend depositions as noticed and directed by the Court, requesting several continuances, filing inappropriate papers with the Court and failing to attend the February 2024 Trial. Anna has likewise delayed these proceedings by failing to timely complete discovery, failing to attend depositions as noticed and directed by the Court, requesting several continuances, filing another bankruptcy in 2024 to delay these proceedings and not returning to the February 2024 Trial. Because UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) are not individuals and can only appear and be heard through counsel, they have also delayed these proceedings by failing to appear at the February 2024 Trial.[86]

---

[85] Rule 16(f) allows courts to issue any just orders including those authorized by Rule 37(b)(2)(A)(ii)-(vii). Orders authorized by Rule 37(b)(2)(A)(ii)-(vii) include: "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. Rule 37(b)(2)(A)(ii)-(vii).

[86] Local Rule 1074-1 provides that corporations, partnerships, trusts, and other persons who are not individuals may appear and be heard only through counsel permitted to practice in the Court under Local Rule 2090-1. *Wolfe v. Rodriguez (In re Rodriguez)*, 633 F. Appx' 524, 526 (11th Cir. Dec. 2, 2015)(bankruptcy court properly struck pleadings filed by officer on behalf of corporation); *F.T.C. v. Gem Merchandising Corp*, No. 95-8364, 1995 WL 623168 (11th Cir. 1995)("It is well settled that a corporation is an artificial entity which cannot appear *pro se* in legal proceedings but must be represented by counsel.").

Juravin and Anna have not provided any good cause why they continued to violate the deadlines established in the November 2023 Trial CMO and later the February 2024 Trial CMO, and did not comply with the Local Rules regarding adversary proceedings referenced in the orders. *See Loos v. Club Paris, LLC*, 6:07-cv-1376, 2009 WL 1458040, * 3 (M.D. Fla. May 26, 2009)(*pro se* defendant's apologies and excuses for not knowing federal and local rules are not good cause for failing to follow court's case management order). The February 2024 Trial CMO was clear that no continuances of the trial would be granted. Failure to appear at a trial alone is a sufficient "delay" or "disruption" which supports entry of default judgment and even a finding of bad faith. *See Brainstorm USA, LLC v. Manes*, No. 1:07-CV-01201, 2010 WL 11720741 at *3 (N.D. Ga. Sept. 24, 2010)(citing *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984)("The failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default is appropriate."))). The Court did not find credible Juravin and Anna's assertions that Juravin's health condition prevented his attending trial.[87]

Based on the actions (or inactions) of Juravin and Anna throughout these proceedings, this Court is left with no doubt that Juravin and Anna would only continue to delay these proceedings and never meaningfully participate in any trial. Juravin and Anna have willfully disregarded the rules and this Court's orders. By Juravin not attending trial and not completing discovery as ordered and by Anna not returning to trial after the Court's lunch recess, not completing discovery as ordered and filing multiple bankruptcy cases, Juravin and Anna have demonstrated their bad faith in delaying these proceedings. Any lesser sanctions, such as prohibiting Juravin and Anna from opposing Bella Collina or the Kennedy's claims, or from introducing evidence at trial, would be

---

[87] Despite alleging the seriousness of Juravin's health issues, he never visited a hospital for treatment choosing instead to visit a walk-in clinic. Such actions belie the seriousness of any illness and must be viewed considering his repeated attempts to delay these proceedings.

futile. Because UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) can only appear and be heard through counsel, they also did not comply with the February 2024 CMO and Local Rules.

Accordingly, the Court strikes the answers, including any affirmative defenses, filed by Juravin, Anna, UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) and enters a default judgment against them under Rule 16(f) for their pattern of delay throughout these proceedings and their failure to obey the February 2024 Trial CMO and Local Rules. Because the Court enters a default judgment against Juravin, Anna, UMGI, Juravin, Inc. (active) and Juravin, Inc. (inactive) as a sanction, the Court must now determine the appropriate relief to grant Bella Collina and the Trustee based on their respective claims.

<u>Default Judgment</u>

Federal Rule of Civil Procedure 55, made applicable by Bankruptcy Rule 7055, governs default judgments. "A court may enter a default judgment only if the factual allegations of the complaint, which are assumed true, provide a sufficient legal basis for entry of a default judgment." *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015)(citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200,1206 (5th Cir. 1975)). Courts considering entry of a default judgment must examine the sufficiency of plaintiff's allegations to determine whether a default judgment is warranted. *Jackson v. Creation Maintenance, Inc.,* No 6:23-cv-38, 2024 WL 1494306 at * 2 (M.D. Fla. Feb. 21, 2024). Although detailed factual allegations are not required, the complaint must assert more than "unadorned, the-defendant-unlawfully-harmed-me" accusations, "labels and conclusions" or "a formulaic recitation" of the cause of action elements. *Id.* at * 2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 55 (b)(2), the court may determine the amount of damages or establish the truth of any allegation by evidence, among other items, at a hearing, when entering a default judgment. Fed. R. Civ. P. 55 (b)(2). The court may forego such a

hearing however "where all essential evidence is already of record." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015)(quoting *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). Having considered the complaints, record and evidence admitted at the February 2024 Trial, the Court addresses the claims brought against each defendant in the Bella Collina Proceeding and Trustee Proceedings.

<u>Bella Collina Proceeding—Claims Against Juravin</u>

Bella Collina and Kennedy request under 11 U.S.C. § 727(d)(1) and (2) that the Court revoke the discharge Juravin received in his bankruptcy case.[88] Under § 727(d)(1), the bankruptcy court must revoke a chapter 7 discharge upon request by the trustee or a creditor when the debtor obtains a discharge through fraud, and the requesting party did not know of such fraud until after entry of the discharge. 11 U.S.C. § 727(d)(1); *In re Thompson*, 939 F.3d 1279, 1282-83 (11th Cir. 2019). Similarly, under § 727(d)(2), the bankruptcy court must revoke a chapter 7 discharge upon request by the trustee or a creditor when the debtor acquired property of the estate and knowingly and fraudulently failed to report the acquisition of such property or surrender such property to the trustee. 11 U.S.C. § 727(d)(2); *In re Thompson*, 939 F.3d at 1283.

The amended complaint sufficiently alleges in detail that Juravin intentionally misrepresented his schedules and statement of financial affairs by failing to disclose "tens of thousands of dollars of household goods and furnishings" as itemized and "hundreds of thousands of dollars" on deposit with third parties of which Juravin had exclusive control, all in an attempt to fraudulently obtain a discharge.[89] Bella Collina had no knowledge of the fraudulent misrepresentations before entry of the Discharge and but for the Break Order (entered after the Discharge), Bella Collina would not have uncovered the concealed household goods and financial

---

[88] Bella Collina AP Doc. No. 15, Amended Complaint Counts 1 and 2.
[89] Bella Collina AP Doc. No. 15, Amended Complaint ¶¶ 18-36, 38-39, 41.

assets.[90] The evidence admitted at trial supports all these factual allegations.[91] The factual allegations of the amended complaint, which are assumed true, and the evidence admitted at trial, both provide a sufficient legal basis for entry of a default judgment revoking the Discharge under 11 U.S.C. § 727(d)(1) in Juravin's bankruptcy case.

The amended complaint also sufficiently alleges in detail that a third party, NVLC, held funds on deposit really belonging to Juravin and that NVLC returned funds identified on attached Exhibit A to Juravin during his bankruptcy case and that Juravin knowingly and fraudulently failed to report such property.[92] The evidence admitted at trial further supports these factual allegations.[93] The factual allegations of the amended complaint, which are assumed true, and the evidence admitted at trial, provide a sufficient legal basis for entry of a default judgment revoking the Discharge under 11 U.S.C. § 727(d)(2) in Juravin's bankruptcy case.

Accordingly, the Court finds that the amended complaint properly states under 11 U.S.C. § 727 (d)(1) and (2) claims to revoke the Discharge in Juravin's bankruptcy case, and with entry of a default, Juravin has admitted the allegations as true. The evidence admitted at trial further supports Bella Collina's factual allegations of the amended complaint. Final Default Judgment will be entered in favor of Bella Collina and against Juravin on all counts of the amended complaint revoking the Discharge in Juravin's bankruptcy case.

---

[90] Bella Collina AP Doc. No. 15, Amended Complaint ¶ 43.
[91] *See e.g.* Plaintiffs' Joint Exhs. Nos. 47-56. Plaintiffs' Joint Exhibits consists of 85 exhibits and thousands of pages, all of which the Court admitted into evidence. There may be other exhibits supporting these findings not cited herein.
[92] Bella Collina AP Doc. No. 15, Amended Complaint ¶¶ 31-32; 51-53.
[93] *See e.g.* Plaintiffs' Joint Exhs. Nos. 11, 14, 16, 23-28, 32, 48-56. Plaintiffs' Joint Exhibits consists of 85 exhibits and thousands of pages, all of which the Court admitted into evidence. There may be other exhibits supporting these findings not cited herein.

Trustee's Proceedings—Common Factual Allegations

All complaints filed by Kennedy asserted the following facts. In September 2014, the FTC filed a complaint against Juravin alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act asserting Juravin falsely or deceptively advertised weight-loss products causing over $25 million in consumer injury.[94] The FTC later amended the complaint to name MCO as a defendant.[95] The FTC obtained summary judgment on all counts and a final judgment totaling $25,246,000 was entered against Juravin and MCO.[96] The Court refers to the foregoing as "Common Allegations" while addressing claims against the defendants.

Trustee's Proceedings—Claims Against Juravin, Inc. (active) & Juravin, Inc. (inactive)

Kennedy asserts claims to avoid transfers made to Juravin, Inc. (inactive) totaling over $3.6 million as both actually and constructively fraudulent transfers under § 548 of the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101, et. seq. ("FUFTA").[97] A trustee may avoid any transfer by the debtor that is voidable under federal or state law by a creditor holding an allowable unsecured claim. 11 U.S.C. § 544(b)(1). Because fraudulent transfer claims under FUFTA are analogous "in form and substance" to those under §548, courts analyze such claims contemporaneously, with the only material difference being the four-year look back period under FUFTA and two-year look back period under § 548. *Stermer v. Old Republic Nat'l Title Ins.*

---

[94] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 20, 22; Kennedy AP 16 Doc. No. 1, Complaint ¶ 22; Kennedy AP 142 Doc. No. 1, Complaint ¶ 18; Kennedy AP 19 Doc. No. 1, Complaint ¶ 22; Kennedy AP 20 Doc. No. 1, Complaint ¶ 22.

[95] Kennedy AP 141 Doc. No. 1, Complaint ¶ 21; Kennedy AP 16 Doc. No. 1, Complaint ¶ 23; Kennedy AP 142 Doc. No. 1, Complaint ¶ 19; Kennedy AP 19 Doc. No. 1, Complaint ¶ 23; Kennedy AP 20 Doc. No. 1, Complaint ¶ 23.

[96] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 27, 29, 32, Exh. A; Kennedy AP 16 Doc. No. 1, Complaint ¶¶ 29, 31, 33, Exh. A; Kennedy AP 142 Doc. No. 1, Complaint ¶¶25, 30; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 29, 34; Kennedy AP 20 Doc. No. 1, Complaint ¶¶ 29, 34.

[97] Kennedy AP 141 Doc. No. 1, Complaint Counts 3 and 4; Kennedy AP 16 Doc. No. 1, Complaint Counts 3 and 4. Kennedy requests a judgment avoiding and recovering the transfers under 11 U.S.C. §§ 544(b)(1), 548(a)(1), 550 and Florida Statutes §§726.105(1)(a),(b), 726.106(1) and 726.108.

*Co. (In re ATIF, Inc.),* No. 2:17-bk-01712, 2021 WL 6060011 at *10, (Bankr. M.D. Fla. Dec. 2, 2021) (quoting *Kapila v. SunTrust Mortg., Inc. (In re Pearlman)*, 515 B.R. 887, 894 (Bankr. M.D. Fla. 2014)). To establish an actual fraudulent transfer under § 548(a)(1)(A) and Fla. Stat. § 726.105(1)(a), the trustee must show a debtor transferred an interest in property and the debtor made "such transfer with actual intent to hinder, delay or defraud any creditor." *Kapila v. Warburg Pincus, LLC*, No. 8:21-cv-2362, 2024 WL 1382398, *7 (M.D. Fla. March 31, 2024)(quoting *In re ATM Fin. Servs., LLC*, NO 6:08-bk-969, 2011 WL 2580763, at *4 (Bankr. M.D. Fla. June 24, 2011)).[98] For a constructively fraudulent transfer under § 548(a)(1)(B) and Fla. Stat. §§ 726.105(1)(b) and 726.106(1), the trustee must show the debtor transferred an interest in property for which the debtor did not receive reasonably equivalent value and establish one of several factors, including, (i) the debtor was insolvent at the time of transfer or became insolvent as a result of the transfer or (ii) the debtor intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as they became due. *See Kapila v. Warburg,* 2024 WL 1382398, *9-10; *O'Halloran v. Harris Corp*., No. 8:15-cv-2788, 2016 WL 4467254 at *3, (M.D. Fla. Aug. 24, 2016). Once the transfer is avoided, the trustee may recover, for the benefit of the

---

[98] Because actual fraud is rarely proven by direct evidence, courts consider whether circumstantial evidence support an inference of fraudulent intent often looking for "badges of fraud." *In re McCarn's Allstate Finance, Inc.*, 326 B.R. 843, 849-50 (Bankr. M.D. Fla. 2005). These "badges of fraud" include:
(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
*Id.* citing *In re Levine*, 134 F.3d 1046,1053 (11th Cir. 1998).

estate, the property transferred or the value of such property from the initial transferee of such transfer. 11 U.S.C. § 550(a)(1).

The complaints sufficiently allege that Juravin and MCO made actually and constructively fraudulent transfers under § 548 and FUFTA to Juravin, Inc. (inactive) totaling $2,718,414.33. Based on the Common Allegations, the FTC is a creditor of both Juravin and MCO holding an allowed unsecured claim. After the FTC filed the complaint and within four years of Juravin's bankruptcy filing (from December 23, 2014 through October 10, 2018), Juravin transferred $2,005,027.00 to Juravin, Inc. (inactive) as reflected in the schedule of payments exhibit attached to the complaint.[99] After the FTC filed the complaint and within four years of MCO's bankruptcy filing (from March 9, 2016 through October 31, 2018), MCO transferred $713,387.33 to Juravin, Inc. (inactive) as reflected in the schedule of payments exhibit attached to the complaint.[100]  Both Juravin and MCO made these transfers with actual intent to hinder, delay or defraud a creditor.[101] Juravin and MCO did not receive reasonably equivalent value in exchange for their transfers to Juravin, Inc. (inactive).[102] Juravin and MCO each had liabilities which exceeded their respective assets and were insolvent or became insolvent from the transfers made to Juravin, Inc. (inactive).[103] At the time of the transfers, both Juravin and MCO incurred or should have known they would incur debts beyond their ability to pay as they became due.[104] Juravin and MCO each have at least one creditor who holds an allowable unsecured claim.[105]

---

[99] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 66, 67, 88.

[100] Kennedy AP 16 Doc. No. 1, Complaint ¶¶ 71, 72, Exh. A. Exhibit A also lists transfers Juravin made to Juravin, Inc. (inactive) totaling $81,796. Because Juravin made the transfers and they are included in the $2,005,027.00 of transfers Juravin made to Juravin, Inc. (inactive), the Court does not include them with respect to transfers made by MCO.

[101] Kennedy AP 141 Doc. No. 1, Complaint ¶ 89. Kennedy AP 16 Doc. No. 1, Complaint ¶ 97.

[102] Kennedy AP 141 Doc. No. 1, Complaint ¶ 98. Kennedy AP 16 Doc. No. 1, Complaint ¶ 106.

[103] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 100, 101. Kennedy AP 16 Doc. No. 1, Complaint ¶¶ 108, 109.

[104] Kennedy AP 141 Doc. No. 1, Complaint ¶ 99. Kennedy AP 16 Doc. No. 1, Complaint ¶ 107.

[105] Kennedy AP 141 Doc. No. 1, Complaint ¶ 103. Kennedy AP 16 Doc. No. 1, Complaint ¶ 111.

After Juravin and MCO filed their respective bankruptcy cases and Kennedy had sought to sell the estate's interests in Juravin, Inc. (inactive), Juravin, as president of Juravin, Inc. (inactive), signed and submitted an affidavit to the Florida Division of Corporations releasing the name of Juravin, Inc. (inactive) which allowed Anna to form a new entity named Juravin, Inc. (active) on July 23, 2020.[106] Anna is listed as president, secretary, treasurer, and director of Juravin, Inc. (active).[107] Juravin and Anna's residence is listed as the principal place of business for both Juravin Inc. (inactive) and Juravin, Inc. (inactive).[108] The evidence admitted at trial further supports all the foregoing factual allegations.[109]

The factual allegations of the complaints, which are assumed true, and the evidence admitted at trial, provide a sufficient legal basis for entry of a default judgment against Juravin, Inc. (inactive) in the amount of $2,718,414.33 for the avoidance of both actually and constructively fraudulent transfers under § 548 of the Bankruptcy Code and FUFTA.[110] Although Kennedy requests avoidance of transfers totaling over $3.6 million, the Court reduced the amount because the exhibit attached to the complaints included transfers made between non-debtors or exceeded the four-year look back period under FUFTA and as a result, cannot be avoided.[111] The Court finds Juravin, Inc. (active) is jointly and severally liable with Juravin, Inc. (inactive) for the avoidance of

---

[106] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 54-61. Kennedy AP 16 Doc. No. 1, Complaint ¶¶ 58-65. *See also* Plaintiffs' Joint Exh. 71.

[107] Kennedy AP 141 Doc. No. 1, Complaint ¶ 62. Kennedy AP 16 Doc. No. 1, Complaint ¶ 66.

[108] Kennedy AP 141 Doc. No. 1, Complaint ¶¶ 63, 64. Kennedy AP 16 Doc. No. 1, Complaint ¶¶ 67, 68.

[109] *See e.g.* Plaintiffs' Joint Exhs. 11-21, 42-46, 71. Plaintiffs' Joint Exhibits consists of 85 exhibits and thousands of pages, all of which the Court admitted into evidence. There may be other exhibits supporting these findings not cited herein.

[110] The total amount of $2,718,414.33 consists of the $2,005,027.00 Juravin transferred to Juravin, Inc. (inactive) and the $713,387.33 MCO transferred to Juravin, Inc. (inactive).

[111] In Kennedy AP 141, Exhibit A to the complaint included MCO transfers to Juravin, Inc. (inactive) between May 19, 2015 through September 23, 2015 totaling $304,800 which occurred more than four years before the MCO bankruptcy filing and cannot be avoided. Exhibit A also included transfers Roca Lab made to Juravin, Inc. (inactive) totaling $709,100. Roca Labs is not a party to the complaint and the trustee cannot avoid transfers made by a non-debtor to another non-debtor. Although Kennedy obtained a default final judgment against Roca Labs, the judgment had no findings with respect to any alter ego or piercing the corporate veil claims in the multi-count complaint. *See Kennedy v. Roca Labs Nutraceutical USA, Inc., (In re Juravin)*, Adv. No. 6:21-ap-00144-LVV at Doc. No. 28.

these transfers having been organized to mislead or perpetrate a fraud on creditors and is the mere continuation of Juravin, Inc. (inactive) with identical name, principal place of business and closely related principals.[112] Because Kennedy's remaining claims against Juravin, Inc. (inactive) and Juravin, Inc. (active) seek to recover the identical transfers through other legal theories, the Court declines to address the remaining claims.[113]

Accordingly, the Court finds that the complaints properly state under § 548 and FUFTA that Juravin and MCO made actually and constructively fraudulent transfers to Juravin, Inc. (inactive) totaling $2,718,414.33, and Juravin, Inc. (active) is jointly and severally liable with Juravin, Inc. (inactive) for these actually and constructively fraudulent transfers. With entry of a default, Juravin, Inc. (active) and Juravin, Inc. (inactive) have admitted the complaint allegations as true. The evidence admitted at trial further supports Kennedy's factual allegations of the complaints. Kennedy may recover $2,718,414.33, from Juravin, Inc. (inactive) and Juravin, Inc. (active) for the benefit of the estate under 11 U.S.C. § 550(a)(1). Final Default Judgment will be entered in favor of Kennedy and against Juravin, Inc. (inactive) and Juravin, Inc. (active) in the amount of $2,718,414.33 on counts 3 and 4 of the complaints filed in the Juravin and MCO bankruptcy cases.[114]

---

[112] Count 1 seeks to pierce the corporate veil/alter ego as to Juravin, Inc. (inactive), Juravin, Inc. (active) and Anna. Kennedy AP 141 Doc. No. 1, Complaint Count 1. Kennedy AP 16 Doc. No. 1, Complaint Count 1. "Under Florida law, an alter ego claim is an action to impose liability on a corporation's principals or related entities where a corporation was organized or used to mislead creditors or to perpetrate a fraud upon them." *Rivera v. Paul C. Larsen, P.A. (In re Paul C. Larsen, P.A.)*, 610 B.R. 684, 688 (Bankr. M.D. Fla. 2019) (quoting *In re Batcheler*, 600 B.R. 680,688 (Bankr. S.D. Fla. 2019)). With the upcoming sale of Juravin, Inc. (inactive), the Court has no doubt that Juravin, Inc. (active) was formed to mislead or perpetrate a fraud on creditors and Kennedy. Because courts are reluctant to pierce the corporate veil, however, the Court does so only with the limited purpose to hold Juravin Inc. (active) jointly and severely liable with Juravin, Inc. (inactive) for the recovery of the avoided fraudulent transfers. *See Larsen*, 610 B.R. at 688-89.
[113] The remaining claims against Juravin, Inc. (inactive) and Juravin, Inc. (active) are to pierce the corporate veil/alter ego and turnover. Kennedy AP 141 Doc. No. 1, Complaint Counts 1, 2. Kennedy AP 16 Doc. No. 1, Complaint Counts 1, 2.
[114] Kennedy AP 141 Doc. No. 1, Complaint Counts 3 and 4; Kennedy AP 16 Doc. No. 1, Complaint Counts 3 and 4.

<u>Trustee's Proceedings—Claims Against UMGI and Anna</u>

Kennedy asserts claims to avoid transfers made to UMGI totaling $950,000 as actually and constructively fraudulent transfers or as unauthorized post-petition transfers of estate property, and seeks to recover from Anna, as an immediate transferee, $160,000 she received from UMGI, under §§ 548, 549 and 550 of the Bankruptcy Code and FUFTA.[115] Because the Trustee relies on the identical statutes used to avoid actually and constructively fraudulent transfers made to Juravin, Inc. (inactive), the Court applies the same legal standards previously discussed and will not repeat them here.

A trustee may recover unauthorized post-petition transfers of estate property. *In re Delco Oil*, 599 F.3d 1255, 1258 (11th Cir. 2010). "To avoid a transfer under Section 549(a) a trustee need only demonstrate: (1) a post-petition transfer (2) of estate property (3) which was not authorized by the Bankruptcy Code or the Court." *Id.* citing 11 U.S.C. § 549(a); *Manuel v. Allen*, 217 B.R. 952,955 (Bankr. M.D. Fla. 1998). Property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," without regard to "wherever located and by whomever held." 11 U.S.C. § 541(a)(1). Once a transfer is avoided, the trustee may recover the property transferred from the initial transferee or any immediate or mediate transferee of such initial transferee of the transfer. 11 U.S.C. § 550 (a); *Delco Oil*, 599 F.3d at 1259; *Kapila v. SunTrust Mortg., Inc. (In re Pearlman)*, 515 B.R. 887, 899 (Bankr. M.D. Fla. 2014).[116]

The complaints sufficiently allege that Juravin and MCO made actually and constructively fraudulent transfers or unauthorized post-petition transfers of estate property totaling $950,000 to

---

[115] Kennedy AP 142 Doc. No. 1, Complaint Counts 6, 7, 8, 10, 12 and 13; Kennedy AP 19 Doc. No. 1, Complaint Counts 4, 5, 7, 9 and 10. Kennedy requests a judgment avoiding and recovering the transfers under 11 U.S.C. §§ 544(b)(1), 548(a)(1), 549, 550 and Florida Statutes §§726.105(1)(a),(b), 726.106(1) and 726.108.

[116] The Court recognizes that a subsequent transferee may assert a "good faith" defense which prevents the Trustee from recovering from such transferee that "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). Here, the Court has stricken any "good faith" defense Anna may have asserted in her papers.

UMGI and UMGI then transferred $160,000 of those monies to Anna. Based on the Common Allegations, the FTC is a creditor of both Juravin and MCO holding an allowable unsecured claim.

Natural Vitamins Laboratory Corp. ("NVLC") manufactures supplements that Juravin and MCO ordered and used in their weight-loss products.[117] Juravin and MCO routinely overpaid NVLC for the supplements.[118] Although NVLC billed Juravin for a total of $1,685,644.76 between December 16, 2013 and November 7, 2018, Juravin and MCO made "payments and deposits" totaling $3,324,217.50 to NVLC during that time period, resulting in NVLC holding over $1.5 million of Juravin and MCO funds (the "$1.5 Million Deposit").[119] Juravin and MCO remained in control of the $1.5 Million Deposit, directing NVLC when and where to transfer funds of the $1.5 Million Deposit.[120] From September 12, 2018 through October 1, 2020, Juravin and MCO directed NVLC to disburse $1,572,250 of the Deposits (the "$1.5 Million Transfers").[121] Although NVLC's records reflect that MCO received the $1.5 Million Transfers, from July 2019 through October 2020, UMGI received $950,000 of the $1.5 Million Transfers ("UMGI Transfers"), and not MCO.[122] UMGI is operated and controlled by Anna and Juravin.[123] On July 8, 2019, UMGI received $350,050 of the UMGI Transfers and on July 18, 2019, UMGI transferred $160,000 to Anna ("Anna Transfer").[124]

As an initial matter, it is important to note that the Trustee asserts both Juravin and MCO had interests the $1.5 Million Deposits and that all deposits with NVLC occurred prior to the Juravin and MCO bankruptcy filings. The $1.5 Million Transfers, UMGI Transfers and Anna

---

[117] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 85, 86; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 90, 91.
[118] Kennedy AP 142 Doc. No. 1, Complaint ¶ 91; Kennedy AP 19 Doc. No. 1, Complaint ¶ 96.
[119] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 93, 94, 95, 112; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 98, 99, 101, 118.
[120] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 96, 97; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 102, 103, 104.
[121] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 97, 98, 99; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 104, 105.
[122] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 103, 104; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 109, 110.
[123] Kennedy AP 142 Doc. No. 1, Complaint ¶ 63; Kennedy AP 19 Doc. No. 1, Complaint ¶ 68.
[124] Kennedy AP 142 Doc. No. 1, Complaint ¶ 137; Kennedy AP 19 Doc. No. 1, Complaint ¶ 146.

Transfer were a series of transactions spanning over a three-year period and during this time the Juravin and MCO bankruptcy filings occurred, both bankruptcy filings over a year apart from each other. Because of these timing issues, a particular transaction of the UMGI Transfers and Anna Transfer may have occurred pre-petition as to one debtor and post-petition as to the other. Nevertheless, all transfers made by Juravin or MCO were either fraudulent transfers of property of the debtor before the bankruptcy filings or unauthorized post-petition transfers of estate property.

Both Juravin and MCO made the UMGI Transfers with actual intent to hinder, delay or defraud any creditor.[125] Juravin and MCO did not receive reasonably equivalent value in exchange for the UMGI Transfers.[126] Juravin and MCO each had liabilities which exceeded their respective assets and were insolvent or became insolvent from the UMGI Transfers.[127] At the time of the UMGI Transfers, both Juravin and MCO incurred or should have known they would incur debts beyond their ability to pay as they became due.[128] Juravin and MCO each have at least one creditor who holds an allowable unsecured claim.[129] Juravin also made the UMGI Transfers after he had filed bankruptcy.[130] The UMGI Transfers consisted of funds from the $1.5 Million Deposits, which was property of the estate.[131] The UMGI Transfers were not authorized by this Court or the Bankruptcy Code.[132]

Because Juravin and MCO made actually and constructively fraudulent transfers under § 548 and FUFTA or unauthorized post-petition transfers totaling $950,000 to UMGI, and UMGI then transferred $160,000 to Anna, the Trustee may recover the property transferred from UMGI or

---

[125] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 195-197; Kennedy AP Doc. No. 1, Complaint ¶¶ 178-181.
[126] Kennedy AP 142 Doc. No. 1, Complaint ¶ 208; Kennedy AP 19 Doc. No. 1, Complaint ¶ 192.
[127] Kennedy AP 142 Doc. No. 1, Complaint ¶ 210, 211; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 194, 195.
[128] Kennedy AP 142 Doc. No. 1, Complaint ¶ 209; Kennedy AP 19 Doc. No. 1, Complaint ¶ 193.
[129] Kennedy AP 142 Doc. No. 1, Complaint ¶ 213; Kennedy AP 19 Doc. No. 1, Complaint ¶ 197.
[130] Kennedy AP 142 Doc. No. 1, Complaint ¶ 189.
[131] Kennedy AP 142 Doc. No. 1, Complaint ¶ 191.
[132] Kennedy AP 142 Doc. No. 1, Complaint ¶ 190.

any immediate transferee, such as Anna.[133] The evidence admitted at trial further supports the foregoing factual allegations.[134]

The factual allegations of the complaints, which are assumed true, and the evidence admitted at trial, provide a sufficient legal basis for entry of a default judgment against UMGI in the amount of $950,000 for actually and constructively fraudulent transfers avoided under § 548 of the Bankruptcy Code and FUFTA and for the recovery of unauthorized post-petition transfers of estate property under § 549 of the Bankruptcy Code and against Anna in the amount of $160,000 as an immediate transferee of the UMGI transfer. Because Kennedy's remaining claims against UMGI seek to recover the identical transfers through other legal theories, the Court declines to address the remaining claims.[135]

As to Anna, however, Kennedy asserts claims to avoid other transfers MCO made based upon an employment agreement between the parties as both actually and constructively fraudulent transfers under § 548 of the Bankruptcy Code and FUFTA.[136] The complaint sufficiently alleges and evidence admitted at trial demonstrate that MCO made actually and constructively fraudulent transfers to Anna totaling $21,000. Based on the Common Allegations, the FTC is a creditor of both Juravin and MCO holding an allowable unsecured claim.

In 2016, Anna and MCO entered into an employment agreement that provided MCO would pay Anna a total of $355,000 from 2016 through 2020.[137] After the FTC filed the complaint and

---

[133] Kennedy AP 142 Doc. No. 1, Complaint ¶¶ 201, 214, 247, 248, 261; Kennedy AP 19 Doc. No. 1, Complaint ¶¶ 185, 198, 231, 232.

[134] *See e.g.* Plaintiffs' Joint Exhs. 11, 22-28, 33, 38, 42-46, 48-52, and 56. Plaintiffs' Joint Exhibits consists of 85 exhibits and thousands of pages, all of which the Court admitted into evidence. There may be other exhibits supporting these findings not cited herein.

[135] The remaining claims against UMGI are for turnover of property under 11 U.S.C. §§542(a), 549. Kennedy AP 142 Doc. No. 1, Complaint, Count 9; Kennedy AP 19 Doc. No. 1, Complaint, Count 6.

[136] Kennedy AP 20 Doc. No. 1 Complaint, Counts 1 and 2. Kennedy requests a judgment avoiding and recovering the transfers under 11 U.S.C. §§ 544(b)(1), 548(a)(1), 550 and Florida Statutes §§ 726.105(1)(a),(b), 726.106(1) and 726.108.

[137] Kennedy AP 20 Doc. No. 1, Complaint ¶¶ 47-49.

within four years of MCO's bankruptcy filing, MCO transferred $6,000 on August 25, 2016 and $15,000 on January 9, 2018 to Anna.[138] No written employment agreement is before the Court. Based on the services provided by Anna, if any, the amount MCO paid to Anna is excessive.[139] MCO made these transfers with actual intent to hinder, delay or defraud any creditor.[140] MCO did not receive reasonably equivalent value in exchange for the payments to Anna.[141] At the time of the transfers, MCO had liabilities that exceeded assets and was insolvent or became insolvent from the transfers.[142] At the time of the transfers, MCO intended to incur or should have known it would incur debts beyond its ability to pay as they became due.[143] MCO has at least one creditor who holds an allowable unsecured claim who would have standing to assert claims under FUFTA.[144] The evidence admitted at trial further supports all the foregoing factual allegations.[145]

The factual allegations of the complaint, which are assumed true, and the evidence admitted at trial, provide a sufficient legal basis for entry of a default judgment against Anna in the amount of $21,000 for the avoidance and recovery of both actually and constructively fraudulent transfers under § 548 of the Bankruptcy Code and FUFTA. Although Kennedy requests avoidance of transfers totaling over $40,000, the Court reduced the amount because the exhibits admitted into

---

[138] Plaintiffs' Joint Exhibits 31, 32.
[139] Kennedy AP 20 Doc. No. 1, Complaint ¶ 52.
[140] Kennedy AP 20 Doc. No. 1, Complaint ¶ 68.
[141] Kennedy AP 20 Doc. No. 1, Complaint ¶ 77.
[142] Kennedy AP 20 Doc. No. 1, Complaint ¶¶ 79-80.
[143] Kennedy AP 20 Doc. No. 1, Complaint ¶ 78.
[144] Kennedy AP 20 Doc. No. 1, Complaint ¶¶ 73, 82.
[145] *See e.g.* Plaintiffs' Joint Exhs. 31, 32, 42-46. Plaintiffs' Joint Exhibits consists of 85 exhibits and thousands of pages, all of which the Court admitted into evidence. There may be other exhibits supporting these findings not cited herein.

evidence only show transfers to Anna totaling $21,000 and not $40,000.[146] As to any remaining claims Kennedy has asserted against Anna, the Court enters judgment in favor of Anna.[147]

Accordingly, the Court finds that the complaints properly state under §§ 548, 549 and FUFTA that MCO made actually and constructively fraudulent transfers to Anna totaling $21,000 and that Juravin and MCO made actually and constructively fraudulent transfers or unauthorized post-petition transfers totaling $950,000 to UMGI and that UMGI then transferred $160,000 to Anna. With entry of a default, UMGI and Anna have admitted the allegations as true. The evidence admitted at trial further supports Kennedy's factual allegations of the complaints, except that Anna received $21,000 from MCO and not $40,000. Kennedy may recover $21,000, from Anna for the benefit of the estates under 11 U.S.C. § 550(a)(1). Kennedy may recover $950,000 from UMGI under 11 U.S.C. § 550(a)(1) and $160,000 from Anna under 11 U.S.C. § 550(a)(2). Final Default Judgment will be entered in favor of Kennedy and against Anna in the amount of $21,000 on counts 1 and 2 and in the amount of $160,000 on counts 9, 10, 12, and 13 of the complaints filed in the Juravin and MCO bankruptcy cases.[148] Final Default Judgment will be entered in favor of Kennedy and against UMGI in the amount of $950,000 on counts 4, 5, 6, 7, and 8 of the complaints filed in the Juravin and MCO bankruptcy cases.[149]

---

[146] Kennedy AP 20 Doc. No. 1, Complaint; Plaintiffs' Joint Exhibits 31 and 32.

[147] The remaining claims against Anna are to pierce the corporate veil/alter ego as to Juravin, Inc. (active) and Juravin, Inc. (inactive) and turnover of funds from the transfers that the Court has now avoided and allowed Kennedy to recover from Juravin, Inc. (active) and Juravin, Inc. (inactive). *See* Kennedy AP 141 Doc. No. 1, Complaint, Counts 1 and 2. Kennedy AP 16 Doc. No. 1, Complaint, Counts 1 and 2. Based on the complaints' allegations and evidence admitted at trial, Kennedy did not establish that Anna was a shareholder who dominated and controlled Juravin, Inc. (inactive) to the extent that it was nonexistent or that Anna dominated and controlled Juravin, Inc. (active) to the extent that it was also nonexistent, which are required to pierce the corporate veil. *See Larsen*, 610 B.R. at 688. Nor did Kennedy establish by the complaints' allegations or evidence presented at trial that Anna has property of the Juravin or MCO bankruptcy estates subject to turnover.

[148] Kennedy AP 20 Doc. No. 1, Complaint, Counts 1 and 2; Kennedy AP 142 Doc. No. 1 Complaint, Counts 12 and 13; Kennedy AP 19 Doc. No. 1, Complaint, Counts 9 and 10.

[149] Kennedy AP 142 Doc. No. 1, Complaint, Counts 6, 7 and 8; Kennedy AP 19 Doc. No. 1, Complaint, Counts 4 and 5.

Trustee's Proceedings—Claims Against Juravin

Kennedy asserts claims to avoid and recover transfers MCO made to Juravin totaling $400,000 based upon an employment agreement as both actually and constructively fraudulent transfers under § 548 of the Bankruptcy Code and FUFTA.[150] After Kennedy filed the Trustee Proceedings, the Court, at Kennedy's request, substantively consolidated the Juravin and MCO bankruptcy estates for all purposes.[151] The order substantively consolidating provided that the Juravin and MCO estate assets will be treated as common assets and the claims of creditors against the Juravin and MCO estates will be treated as claims against such common assets. Substantive consolidation eliminates claims between the consolidated debtors. *See In re Pearlman*, 462 B.R. 849, 853 (Bankr. M.D. Fla. 2012). As a result of substantive consolidation, the fraudulent transfer claims MCO had against Juravin have been eliminated. Accordingly, Final Default Judgment is entered in favor of Juravin on counts 3 and 4 of the complaint filed in the MCO bankruptcy case.[152]

Sanctions and Other Matters

During these proceedings, Bella Collina and Kennedy filed several motions requesting sanctions against Juravin and Anna, including the Renewed Sanction Request and Second Sanction Request.[153] The primary relief requested by Bella Collina and Kennedy in all the motions was for the Court to enter a default final judgment in their favor. As a result of the entry of the final default judgment against Juravin and Anna, the motions for sanctions filed by Bella Collina and Kennedy are denied as moot and to the extent the motions requested any other relief, such relief is denied.

---

[150] Kennedy AP 20 Doc. No. 1, Complaint, Counts 3 and 4. Kennedy requests a judgment avoiding and recovering the transfers under 11 U.S.C. §§ 544(b)(1), 548(a)(1), 550 and Florida Statutes §§726.105(1)(a),(b), 726.106(1) and 726.108.
[151] Juravin Case Doc. Nos. 914, 939.
[152] Kennedy AP 20 Doc. No. 1, Complaint, Counts 3 and 4.
[153] Bella Collina AP Doc. Nos. 189, 222, 223, 280, 349; Kennedy AP 141 Doc. No. 102; Juravin Case Doc. No. 546.

Juravin's motions for sanctions against counsel for Bella Collina and counsel for Kennedy under Rule 9011 are also denied.[154] Juravin seeks sanctions for allegations made by counsel in the Motion to Compel Depositions, which he claims are false, unsupported and unfairly prejudicial. A party requesting sanctions under Bankruptcy Rule 9011 must follow a two-step process. Fed. R. Bankr. P. 9011(c)(1)(A); *In re Walker*, 523 F.3d 1304, 1308 (11th Cir. 2008). "The party first must serve the motion on the opposing party and then, at least twenty-one days later, file the motion with the court." *Id*. The motion must be served as provided in Bankruptcy Rule 7004. Fed. R. Bankr. P. 9011(c)(1)(A). Failure to comply with these procedures require denial of the request for sanctions. *See In re Yerk*, No. 09-01818, 2013 WL 5377138 (Bankr. M.D. Fla. Sept. 26, 2013); *In re Grew*, 352 B.R. 907, 908 (Bankr. M.D. Fla. 2006).

Here, Juravin did not follow the required procedures of Bankruptcy Rule 9011(c)(1)(A). Juravin did not serve counsel for Bella Collina and counsel for Kennedy with the motions 21 days prior to filing the motions with the Court. The certificate of service accompanying the motions stated that Juravin served counsel for Bella Collina on March 14, 2024 and counsel for Kennedy on March 13, 2024—less than 21 days before filing the motions with the Court on March 14, 2024. Accordingly, Juravin's motions for sanctions are denied.

With entry of a default final judgment in the Bella Collina Proceeding and Trustee Proceedings, other motions or objections filed by the parties in these proceedings have been rendered moot. These motions or objections include the following:

- Juravin's Motion to Exclude Testimony of Charlie Ballot;[155]
- Kennedy's Objection to Defendant's Use of Depositions at Trial;[156]
- Juravin's Motion in Limine to Exclude Plaintiff's Exhibit;[157]

---

[154] Bella Collina AP Doc. Nos. 428, 429.
[155] Bella Collina AP Doc. No. 351.
[156] Bella Collina AP Doc. No. 355.
[157] Bella Collina AP Doc. No. 401.

- Juravin and Anna's Joint Objections to Plaintiffs' Joint Exhibit Lists;[158]
- Bella Collina and Kennedy's Joint Objections to Juravin's Exhibits;[159]
- Juravin and Anna's Fourth Motion to Continue;[160]
- Juravin's Motion to Dismiss Ch 7 Case and Revoke Discharge.[161]

Consistent with this memorandum, the Court will enter a separate final judgment and orders disposing of the matters resolved by this memorandum.

### Conclusion

Juravin and Anna brought this on themselves and their entities. Their refusal to cooperate and participate in these proceedings has resulted in judgments against them. While the Court has attempted to describe all of their obfuscation and delay in this opinion, the full extent is difficult to convey. It is time for this litigation to end and for Defendants to face the consequences of their actions.

###

Clerk to serve.

---

[158] Bella Collina AP Doc. No. 412.
[159] Bella Collina AP Doc. No. 408.
[160] Bella Collina AP Doc. Nos. 423, 427; Juravin Case Doc. No. 1036.
[161] Bella Collina AP Doc. No. 431; Juravin Case Doc. No. 1040.